**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DENNIS HARRIS, | ) |
|   Plaintiff, | ) No. 15-cv-05040 </br> ) </br> ) Judge Marvin E. Aspen |
| v. | ) </br> ) Magistrate Judge Daniel G. Martin |
| C/O SHAW, et al., | ) </br> ) |
|   Defendants. | ) |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

NOW COME Defendants C/O SHAW, TARRY WILLIAMS, MICHAEL MAGANA, MICHAEL LEMKE, KEVIN SENORE, RABADEAU, LIEUTENANT DUMAS, and LIEUTENANT JACOBS, by and through their attorney LISA MADIGAN, Attorney General of the State of Illinois, and submit the following Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and state as follows:

**I.    Introduction**

Plaintiff Dennis Harris is an inmate currently incarcerated at Lawrenceville Correctional Center. (Am. Compl. at 9, Dkt. No. 29.).[1] In his Amended Complaint, Plaintiff alleges that on January 9, 2014, while incarcerated at Stateville Correctional Center, he was interviewed by Defendant Shaw regarding the alleged assault of a prisoner a few days earlier. (*Id.* at 4.) According to Plaintiff, other inmates became aware that he was to be interviewed by Shaw. (*Id.* at 4-5.) Plaintiff alleges that he informed Shaw that he feared for his safety because Shaw "made [Plaintiff] look like a snitch," and Plaintiff requested that he be moved from his cell block to

---

[1] Plaintiff failed to submit his compliant in numbered paragraphs, so references to the Amended Complaint direct the Court to the page number of that document.

1

keep him safe. (*Id.* at 5.) Plaintiff alleges that Shaw did not move Plaintiff from the cell block, as Plaintiff requested. (*Id.*) Plaintiff further alleges that Shaw did not relay Plaintiff's concerns to Stateville's placement officer, despite Plaintiff's request that Shaw do so. (*Id.*) At no point in the Amended Complaint, however, does Plaintiff allege that he informed Shaw of any particular threats or potential assailants.

Plaintiff further alleges that after his interview with Shaw, he received "several threats from anonymous prisoners" in retaliation for speaking with Shaw. (*Id.*) Harris alleges that he wrote letters to Shaw, Rabadeau, and "the Warden of Stateville,"[2] requesting that he be moved off of his cell block. Plaintiff further alleges that he submitted an emergency grievance to Defendant Kevin Senor in his capacity of Warden's designee, and did not receive a timely response. Plaintiff goes on to allege that after he failed to receive a prompt response to his emergency grievance to Senor, he again wrote to Shaw, "the Warden of Stateville," as well as Rabadeau, asking that he be placed into protective custody. (*Id.* at 5-6.) Plaintiff fails to allege that he was aware of any specific threat to his safety; nor does he aver that he informed any of these Defendants of any identifiable danger to his person.

Finally, in an Addendum submitted by the Plaintiff, Plaintiff alleges that he related his alleged "fears for [his safety after being labled [*sic*] a snitch" to Defendants Lt. Dumas and Lt. Jacobs. (*Id.* at 10.) According to Plaintiff, Defendants Dumas and Jacobs told Plaintiff to "write and seek out assistance from the Placement Officer, c/o Shaw, and the Stateville CC warden."

---

[2] In his Amended Complaint, Plaintiff refers only to "the Warden" or "the Warden of Stateville." Although Plaintiff names as defendants three former Stateville Wardens—Defendants Magana, Williams, and Lemke—Magana was the only Warden who occupied this position during the period in which the alleged Eighth Amendment violations took place. Warden Magana was appointed Acting Warden on January 1, 2014, and then served as Warden from January 17, 2014 through March 31, 2014. Plaintiff alleges that the events alleged in his Amended Complaint took place between January 7, 2014 and February 16, 2014.

(*Id.*). Harris alleges that he followed these instructions, but was not provided with the protection he asked for. (*Id.*) Plaintiff again fails to allege that he relayed any specific fears to Jacobs or Harris, or that he forwarded such concerns to Rabadeau, Shaw, or the Warden.

Plaintiff alleges that, as a result of the inaction of the Defendants, he suffered injuries from a beating from an unnamed assailant who uttered the word "snitch" during the assault. (*Id.* at p. 6.) Plaintiff now brings suit against all Defendants, claiming that through their actions and inactions they violated their duty to protect Plaintiff from being assaulted.

## II. Standard

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Although in resolving a motion to dismiss the Court should assume the truthfulness of a plaintiff's well-pleaded factual allegations, the Court need not accept that all of the plaintiff's legal conclusions are true. *Ashcroft v. Iqbal*, 677-79 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Instead, a complaint survives a motion to dismiss only when it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). Additionally, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009); *St. John's United Church of Christ*, 502 F.3d at 625. Finally, "courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks*, 578 F.3d at 581.

3

### III. <u>Argument</u>

Prison officials have a duty to protect inmates from violence inflicted by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To establish an Eighth Amendment claim based on the failure to protect, a plaintiff must show: (1) that he suffered an objectively "sufficiently serious" injury; and (2) that he was "incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834; *see also Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006). The plaintiff must also show that the defendant had the requisite state of mind: deliberate indifference. A prison official is liable under the Eighth Amendment only if "he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. To allege deliberate indifference to a substantial risk of serious harm, the plaintiff must allege that the defendant had ***actual knowledge*** of a ***specific*** threat. *Guzman v. Sheahan*, 495 F.3d 852, 858 (7th Cir. 2007) (emphasis added).

Recently, the Seventh Circuit affirmed summary judgment in favor of defendant prison officials on a failure to protect claim where the plaintiff inmate "never informed jail officers of a specific threat to his life," but instead informed officials that he was "afraid" and "wanted to be moved." *Grieveson v. Anderson*, 538 F.3d 763, 776-77 (7th Cir. Aug. 18, 2008). The court stated that it was not enough that the inmate informed jail officials that "he had been assaulted by another inmate and that he wanted to be moved to another cell block" without providing more specific information, such as the identities of the threatening inmates. *Id.* The "vague information" provided by the inmate "did not put the jail officers on notice of a specific threat to [the inmate's] safety." *Id.* The *Grieveson* decision serves to reinforce the Seventh Circuit's previous holdings that prison officials must possess actual knowledge of a specific threat to incur

4

liability under the Eighth Amendment for the failure to protect. Similarly, in *Guzman* the court affirmed summary judgment in favor of defendant prison officials where, prior to an attack by another inmate, the plaintiff failed to inform prison officials that the attacking inmate "might be a specific danger to him." *Guzman*, 495 F.3d at 857.

District Court decisions also emphasize the necessity of specific knowledge in failure to protect cases. In *Bolden v. Ramos*, the court held that the defendant correctional officers did not violate the plaintiff's Eighth Amendment rights where the officers had no knowledge of a specific threat. 1996 WL 66135, at *6 (N.D. Ill. Feb. 13, 1996) (J. Castillo). The Court indicated that the plaintiff's "prior involvement in an altercation with other inmates . . . is simply not enough" where the officers had no knowledge of those inmates' identities and the plaintiff did not claim that the same inmates attacked him again. *Id.* Similarly, in *Anderson v. Godinez*, 1997 WL 786653, *2 (N.D. Ill. Dec. 13, 1997) (J. Holderman), the court held that the prison officials were not liable under the Eighth Amendment where the plaintiff admitted "that he never named particular inmates whom he feared might attack him." The court stated:

> Although [the plaintiff] had expressed fear for his safety and objected to being placed again in B-West, he admits that he did not know who had attacked him the first time and only expressed a general fear of assault. . . [L]iability depends upon the defendant's knowledge of a definite and specific threat, not mere awareness of the possibility of attack.

*Id.* (citing *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997)).

Plaintiff's Amended Complaint should be dismissed because he failed to allege that any Defendant had actual knowledge of a specific threat to Plaintiff's safety. Taking Plaintiff's allegations as true, he merely informed Shaw that he wanted to be moved out of E-House because he was afraid of "harm or any type of repercussion" based on the possibility that he was "seen by several inmates while [Plaintiff] was in the Internal Affairs Office." (Am. Compl. at 4-

5

5, Dkt. No. 29.) And although the Amended Complaint alleges that the inmate who beat Plaintiff used the word "snitch" during the assault, Plaintiff does not allege that he gave Shaw any information about a definite and specific threat against him.

Plaintiff next alleges that he received "several threats from anonymous prisoners," and wrote grievances and letters to Defendants Rabadeau, "the Warden," Senor, and Shaw asking to be moved out of E-House and/or into protective custody. (*Id.*) Again, Plaintiff fails to allege that he indicated any particular threats to any of these defendants. Furthermore, Plaintiff pleads himself out of court in his reference to threats from "anonymous prisoners." In so pleading, Plaintiff concedes that even he could not identify a potential assailant that posed a danger to him; thus it is implausible that any of the Defendants could be expected to identify a particular threat to Plaintiff.

Finally, with respect to Defendants Dumas and Jacobs, Plaintiff alleges only that he spoke with them about "fearing for my safety after being labled [*sic*] a snitch." (*Id.* at 10.) Again, he makes no allegation that he identified any particular threat of which he was aware, or of a particular assailant. The same is true of Plaintiff's allegation that he wrote to Rabadeau, Shaw, and the Warden at Jacobs and Dumas's suggestion; at no point does he indicate that he informed those defendants of a particular threat, or that he even had a particular threat in mind.

These allegations are directly comparable to the situation before the Seventh Circuit in *Butera v. Cottey*, 285 F.3d 601, 606 (7th Cir. 2002). In that case, the court affirmed summary judgment in favor of defendant prison officials where the plaintiff failed to inform prison officials of the identity of the threatening inmates. The plaintiff's statements to prison officials that he "was scared" and "needed off the block" were insufficient to "give the Sheriff actual notice of a ***specific*** risk of serious harm so as to find the Sheriff deliberately indifferent for

failing to take appropriate steps to prevent the assault." *Id.* (emphasis in original); *see also Lewis*, 107 F.3d at 553. The same is true here; Plaintiff's vaguely worded complaint indicates that even he had no indication of a particular threat to his safety, and that even if he was aware of such a danger, he did not communicate this knowledge to any Defendant.

WHEREFORE, based on the foregoing, Defendants respectfully request this Honorable Court to dismiss all claims against them, and for such further relief the Court finds reasonable and just.

Respectfully submitted,

| | |
|---|---|
| **LISA MADIGAN** | */s/ Jeffrey J. Freeman* |
| Attorney General for Illinois | JEFFREY J. FREEMAN |
| | Assistant Attorney General |
| | Office of the Illinois Attorney General |
| | 100 West Randolph Street, 13th Floor |
| | Chicago, Illinois 60601-3397 |
| | (312) 814-4451 |
| | JFreeman@atg.state.il.us |
| | |
| | *Attorney for Defendants* |

**CERTIFICATE OF SERVICE**

TO: Dennis Harris (#N-66154)
Lawrence Correctional Center
10940 Lawrence Road
Sumner, IL 62466

The undersigned certifies that on December 10, 2015, the foregoing document was served upon the above individual via U.S. first class mail, proper postage prepaid.

*/s/ Jeffrey J. Freeman*