**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DENNIS HARRIS, ) | |
| ) | No. 15-cv-05040 |
| Plaintiff, ) | |
| ) | Judge Marvin E. Aspen |
| v. ) | |
| ) | Magistrate Judge Daniel G. Martin |
| JOEL SHAW, MICHAEL MAGANA, ) | |
| KEVIN SENOR, KAREN RABIDEAU, ) | |
| JOEL DUMAS AND EDWARD JACOBS ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND JURY DEMAND
TO PLAINTIFF'S SECOND AMENDED COMPLAINT**

NOW COME Defendants JOEL SHAW, MICHAEL MAGANA, KEVIN SENOR, KAREN RABADEAU, JOEL DUNMARS (incorrectly named as DUMAS), and EDWARD JACOB (incorrectly named as JACOBS), by and through their attorneys LISA MADIGAN, Attorney General for Illinois, to answer and plead affirmative defenses and make a jury demand to Plaintiff's Second Amended Complaint.

1. Plaintiff Dennis Harris is Inmate N-66154 currently in the custody of the Illinois Department of Corrections at Lawrence Correctional Center, 10940 Lawrence Road, Sumner, IL 62466.

**Answer: Defendants admit the allegations set forth in Paragraph 1.**

2. Prior to being located at Lawrence Correctional Center, and at the time of the events which form a basis for this Complaint, he was in the custody of the Illinois Department of Corrections at Stateville Correctional Center, 16830 So. Broadway St. Joliet, IL 60434 (hereafter sometimes "Stateville").

**Answer:** **Defendants admit that prior to being incarcerated at Lawrence Correctional Center, and at the time of the events which form a basis for the Amended Complaint, Plaintiff was in the custody of the Illinois Department of Corrections at Stateville Correctional Center, which is referred to as "Stateville" at various times in the Amended Complaint. Defendants deny the remaining allegations set forth in Paragraph 2.**

3. At the times pertinent to this Complaint, on information and belief the following Defendants were employed at or otherwise in a position to exert authority over operations at Stateville:

a. Corrections Officer Joel Shaw was an Internal Affairs/Gang Intelligence Office [*sic*] at Stateville;

**Answer: Defendants admit the allegations set forth in Paragraph 3(a).**

b. Michael Magana was, on information and belief, Acting Warden at Stateville beginning January 1, 2014, and served as warden January 17, 2014 to March 31, 2014;

**Answer: Defendants admit the allegations set forth in Paragraph 3(b).**

c. Kevin Senor, was Warden's Designee at Stateville, CC (I.D.O.C.) and on information and belief, reviewed the Warden's mail and Grievances and responded thereto on behalf of the Warden;

**Answer: Defendants admit the allegations set forth in Paragraph 3(c).**

d. Lt. Joel Dumas [*sic*] was an officer in charge of the 7-3 Shift at Edward House (sometimes "E-House") at Stateville;

**Answer:** **Defendants admit that Joel Dunmars was a Correctional Lieutenant at Stateville. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 3(d).**

e. Lt. Edward Jacobs [*sic*] was an officer in charge of the 3-11 Shift at Edward House at Stateville;

**Answer:** **Defendants admit that Edward Jacob was a Correctional Lieutenant at Stateville. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 3(d).**

f. Ms. Karen Rabideau was Placement Officer at Stateville and, on information and belief, was in charge of moving inmates to different locations within Stateville;

**Answer:** **Defendants admit that Karen Rabideau was the Placement Officer at Stateville. Defendants deny the remaining allegations set forth in Paragraph 3(f).**

4. On January 7, 2014, Harris occupied cell 704 at 7 Gallery, Edward House at Stateville.

**Answer:** **Defendants admit the allegations set forth in Paragraph 4.**

5. On information and belief, on January 7, 2014 Harris was released from his cell and went to the shower with two other inmates, the inmates who went to the shower being those who occupied the last (3) cells, Harris in cell 704, Rob in 703 and Damian Reed in 702.

**Answer:** **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 5.**

6. On information and belief, on January 7, 2014 a prisoner was attacked by one or more assailants in the Edward House shower.

**Answer:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 6.

7. On January 9, 2014 Harris was taken from his cell to "the cage" the officer contemporaneously announcing in a voice audible to the gallery that Harris was to be taken to C.O. Shaw of "IA" and Harris was taken from "the cage" by officer Parker to the office area used by defendant C.O. Joel Shaw;

**Answer:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 7.

   a. on said date Harris was present in said office area when another inmate, hereafter Inmate G, passed into said office area to be interviewed, Inmate G observing Harris in said office area;

**Answer:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 7(a).

   b. on said date Harris was interviewed by defendant Shaw about said attack of the prisoner on January 7, 2014;

**Answer:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 7(b).

   c. while Harris was being interviewed defendant Shaw took insufficient steps to protect either Harris's identity or the sensitive nature of the interview, in particular;

**Answer:** Defendants deny the allegations set forth in Paragraph 7(c).

      i. at the time of the interview the foyer door was open while Harris resulting in Harris being seen by several inmates while in the office area, including Inmate G;

**Answer:** **Defendants deny the allegations set forth in Paragraph 7(c)(i).**

    ii.    during the interview defendant Shaw spoke sufficiently loudly, as he questioned Harris, as to be overheard;

**Answer:** **Defendants deny the allegations set forth in Paragraph 7(c)(ii).**

    iii.    Harris was the only person called off 7 Gallery on the 9th of January 2014 to be questioned regarding the attack on January 7, 2014.

**Answer:** **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 7(c)(iii).**

8.    On or about January 9, 2014, Harris communicated with Shaw describing, *inter alia*, that the occurrences surrounding the interview were such that Harris feared that other inmates would be able to identify him as having spoken to Shaw, that those other inmates would conclude that Harris was a "snitch" and that because of that conclusion, Harris feared that he would be attacked by one or more of the other inmates and would suffer injury or death. Because of the threat, Harris asked Shaw to have him moved out of E-House or at least off E-House 7 gallery.

**Answer:** **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 8.**

9.    In his January 9, 2014 communication to Shaw, Harris identified the threatening inmates as "young" and "guys up here." Harris additionally pointed out in the January 9, 2014 letter that his neighbor Riley had been placed in protective custody the preceding day because of danger arising from the similar occurrences.

**Answer:** **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 9.**

10. Harris communicated with the Warden on or about January 9, 2014 describing that he had been placed in a situation by c/o Shaw of IA that made Harris appear to be a straight up snitch and asked to be relocated immediately to another cell house or down on 3 Gallery.

**Answer: Defendants deny the allegations set forth in Paragraph 10.**

11. Harris additionally completed a grievance form on or about January 9, 2014 after describing the conduct of the interview described above attributing to Shaw the statement "tell me what is going on and what happened or I'm going to put you back out there" additionally identifying particular gang members and expressing Harris's concerns that the conduct of the interview would result in his being considered a snitch.

**Answer: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 11.**

12. Harris communicated with the Placement Officer Rabadeau (sic) on or about January 9, 2014 requesting relocation off from 7 Gallery to Another Gallery or different Cell House because he felt like he was being placed in a seriously dangerous. situation by still being upon 7 gallery after being called by IA and questioned by c/o Shaw concluding that Harris really needed to be relocated away from this situation. Harris communicated that he felt his life may be in danger of something happening because they thought Harris was an "informant."

**Answer: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 12.**

13. The information contained in the communications in paragraphs 8 – 12 comprised an emergency grievance.

**Answer: Defendants deny the allegations set forth in Paragraph 13.**

14. On or about January 11, 2014 Harris again communicated with Shaw, repeating his concerns and identified the threatening inmates as "these young super silly guys up here." Harris deposited the letter with evening mail pickup.

**Answer: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 14.**

15. On or about January 11, 2014 Harris again communicated with the Placement Officer Rabadeau (sic) requesting relocation off from 7 Gallery to another Gallery or different Cell House because he felt like he was being placed in a seriously dangerous situation by still being upon 7 gallery after being called by IA and questioned by c/o Shaw concluding that Harris really needed to be relocated away from this situation. Harris communicated that he felt his life may be in danger of something happening because someone thought Harris was an "informant" when he was not.

**Answer: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 15.**

16. Harris deposited communications described in paragraphs 8 – 12, 14 - 15 with evening mail pickup on or about the days identified.

**Answer: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 16.**

17. During the time period described above, the IDOC was evaluating whether or not to transfer Harris to a different facility. Transfer of Harris to a different facility was denied by the Illinois Department of Corrections said denial being communicated to Harris on January 22, 2014 (IDOC 060, IDOC Memorandum Transfer Denial) but on information and belief IDOC failed to consider the danger to Harris in its decision.

**Answer:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 17.

18. On or about January 21, 2014 Harris communicated with defendant Shaw, asked to be moved off of E-House 7 Gallery because his life was in danger and asking to be moved to Pontiac PC immediately because the young stupid guys were labelling Harris a snitch because of Shaw's sending for Harris to be questioned as described in the preceding paragraphs.

**Answer:** Defendants deny the allegations set forth in Paragraph 18.

19. On or about January 28, 2014 Harris again communicated with defendant Shaw, asking to be transferred to another facility and/or requested placement in protective custody, identifying the threatening inmates as "young" and "guys."

**Answer:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 19.

20. On or about February 1, 2014 Harris prepared three Grievance forms one submitted to the Edward House counselor, one addressed to Springfield and one to the Chief Administrator that communicated, *inter alia*,

    a. Shaw's interview procedures described in paragraph 7 caused exposure of Harris to being considered a "snitch" by other inmates;

    b. Harris was concerned over suffering injury as a result of a retaliatory attack;

    c. "younger" inmates were those providing the threat to Harris; Harris placed the February 1, 2014 Grievances in the evening mail. One of the grievances was addressed to the counselor, one to the Department of Corrections supervisory grievance office in Springfield and one to the grievance officer at Stateville.

**Answer: Defendants admit that at some point Plaintiff submitted an emergency grievance that purports to have been written on February 1. Defendants admit that this emergency grievance describes an interview of Plaintiff by Defendant Shaw; that in the grievance Plaintiff expresses concern for his safety and requests to be moved from his current cell; and that he references other inmates who are "young" or "youngsters." Answering further, that document speaks for itself. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 20**.

21. On or about February 1, 2014, Harris communicated to defendants Lt. Jacobs [*sic*] and Lt. Dumas [*sic*] that the occurrences surrounding the interview were such that Harris feared that other inmates would be able to identify him as having spoken to Shaw, that those other inmates would conclude that Harris was a "snitch" and that because of that conclusion, Harris feared that he would be attacked by one or more of the other inmates and would suffer injury or death. In said communications, Harris identified the other inmates who he feared as "the crowd up here", "young", "a younger crowd" and "youngsters." The foregoing identification had sufficient particularity that defendants could readily evaluate the severity of and source of the threat to Harris' safety, health and well-being, the nature of the threat, the based on their familiarity with inmates in Edward House, likely means to execute the threat. This also was placed in the evening mail.

**Answer: Defendants deny that the phrases "the crowd up here", "young", "a younger crowd" and/or "youngsters" has sufficient particularity that Defendants could readily evaluate the severity of and source of the threat to Harris' safety, health and well-being, the nature of the threat, or the likely means of executing that threat. Defendants lack**

**knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 21.**

22. On or about February 4, 2014 Harris communicated with defendant Shaw, identifying the need to be relocated because his life was being threatened and asked to be moved off of E-House 7 Gallery because his life was in danger and asking to be moved by placement to another facility or Pontiac PC immediately because the goofy young guys labelled Harris a snitch because of Shaw's sending for Harris to be questioned as described in the preceding paragraphs. Harris communicated that he feared for his safety. Harris deposited the communication with evening mail pickup.

**Answer: Defendants deny the allegations set forth in Paragraph 22.**

23. Harris communicated with the Administrative Review Board on or about February 10, 2014 forwarding a copy of the grievance described in paragraph 19, questioning whether the February 1, 2014 had been received, after being mailed as Harris was instructed.

**Answer: Defendants deny the allegations set forth in Paragraph 23.**

24. Harris communicated with the Warden's Chief Administrative Officer again on or about February 10, 2014 referencing his letter to Warden Lemki (sic) referenced in paragraph 10 and repeating Harris' safety being placed in danger, the questioning of Harris by other inmates regarding whether Harris ratted out an inmate in the shower, describing Shaw as having placed Harris in a deadly situation, and again requesting to be relocated or placed in protective custody.

**Answer: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 24.**

25. Harris communicated with the Chief Administrative Officer Warden February 13, 2014 "in light of new development" asking be relocated or placed in protective custody "because

my name is now being circulated as being an informant" observing "this guys are calling me a snitch I need to be moved I fear for my safety."

**Answer: Defendants deny the allegations set forth in Paragraph 25.**

26. Between January 9, 2014 and February 16, 2014 Harris spoke with Lieutenant Joel Dumas [*sic*] and Lieutenant Edward Jacobs [*sic*] his fears for his safety after being labeled a snitch, specifically but not limited to Harris spoke with Lt. Dumas [*sic*] on January 25, 2014 and February 14, 2016 and Lt. Jacobs [*sic*] on around February 15, 2014. After Harris related his fears to each, Harris was directed to write and seek out assistance from the Placement Officer, c/o Shaw and the Stateville CC Warden. Additionally, when Harris communicated the threats, he was told, regarding the specific inmates and specific threats, that "These guys are just woofing (make idle threats)".

**Answer: Defendants deny the allegations set forth in Paragraph 26.**

27. Contemporaneous with the communications in the preceding paragraph, Harris requested transfer to a different, and safer, correctional center or to be placed in protective custody.

**Answer: Defendants deny the allegations set forth in Paragraph 27.**

28. On information and belief, between January 9, 2014 and February 16, 2014 inmate Inmate G was moved back to Edward House, the same building in which Harris was located.

**Answer: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 28.**

29. On February 16, 2014 Harris was attacked by another inmate (who on information and believe, known as "KT") a result of which was that Harris's jaw was broken in several

places severely on the right side of his face (head). The attacker called Harris "Punkass Snitch" right before Harris was struck and knocked unconscious.

**Answer: Defendants admit that on February 16, 2014 Plaintiff was admitted to the Stateville Health Care Unit with a fractured jaw on the right side after an altercation with another inmate. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 29.**

30. Since that attack Harris has suffered emotional distress, blurred vision, and headaches. Harris' sometimes slurs and Harris can no longer open my mouth to the same extent he could prior to said attack. Prior to that attack Harris had been an excellent singer which ability has been impaired by his broken jaw.

**Answer: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 30.**

## COUNT I

### FAILURE TO PROTECT HARRIS IN VIOLATION OF THE EIGHTH AMENDMENT

31. Based on the repeated communications regarding threats from "young", "younger" and "youngster" inmates "up here" reference to "this guys [sic]" and given the specific familiarity of defendants with other inmates located proximate 7 gallery, Edward House, Defendants knew of the severity of and source of the threat to Harris' safety, health and well-being, the nature of the threat, and based on their familiarity with inmates in Edward House, likely means to execute the threat to Harris, which threat did in fact become manifest on February 16, 2014, despite the repeated requests for relocation of protective custody for more than one month.

**Answer: Defendants deny the allegations set forth in Paragraph 31.**

32. Defendants maintained or permitted one or more policies, practices and/or customs that caused Plaintiff s injuries, including;

    a. failure to interview Harris in a location and under circumstances that would prevent other inmates from observing Harris being interviewed;

    b. failure to adequately train, supervise and/or control correctional officers, investigative and administrative persons with respect to proper interview, communication, grievance and safety procedures;

    c. failure to consider danger to Harris in denial of transfer when that danger had been communicated before denial of transfer was reported to Harris;

    d. failure to promptly and effectively communicate letters from Harris to persons in positions to provide protection of his safety;

    e. failure to promptly and effectively assess the danger to Harris and take steps necessary and advisable to protect Harris;

    f. failure to protect Harris from attack.

**Answer: Defendants deny the allegations set forth in Paragraph 32.**

33. As acting Warden and Warden Defendant Magana was responsible for overseeing the day to day operation of Stateville and for creating and implementing the policies, practices and/or customs of Stateville, including the grievance process. Defendant Senor as Warden's Designee was responsible for the proper and effective operation of the grievance process and appropriate resolution of grievances. Defendants Dumas [sic] and Jacobs [sic] were responsible for the training, supervision and discipline their subordinates. Defendant Rabideau was responsible for placement of Harris in an appropriately safe gallery or cell block. Defendant

Shaw was responsible for properly conducting investigations and treatment and movement of Harris in such a manner that would not cause risk of harm.

**Answer: Defendants admit that as Acting Warden and Warden, Defendant Magana was responsible for overseeing the day to day operation of Stateville and for oversight and delegation of IDOC policies at Stateville, including but not limited to the grievance process. Defendants admit that as Warden's Designee, Defendant Senor reviewed and responded to emergency grievances. Defendants admit that as Lieutenants, Defendants Dunmars and Jacob were responsible for supervision of their subordinates. Defendants admit that Defendant Rabideau was responsible for placement of inmates in safe circumstances. Defendants admit that Defendant Shaw was responsible for properly conducting investigations. Defendants deny the remaining allegations set forth in Paragraph 33.**

34. Defendants knew or should have known that maintaining or permitting one or more of such policies, practices and/or customs or that failure to act when Harris requested protection would result in or tacitly authorize the violation of Harris's Constitutional rights alleged herein, and Defendants were deliberately indifferent to the likelihood that any such violation would occur.

**Answer: Defendants deny the allegations set forth in Paragraph 34.**

35. These policies, practices and/or customs and the failure to act when Harris requested protection were the cause of Harris's injuries because, but for these policies, and failures to act, Harris would have received adequate protection and therefore avoided injuries inflicted on him and avoided the violation of his Constitutional rights.

**Answer: Defendants deny the allegations set forth in Paragraph 35.**

36. Harris promptly and repeatedly communicated to Defendants the circumstances that lead to his being in danger the reason he feared for his safety sufficient identification of the persons who threatened him, with sufficient particularity that Defendants, with their extensive experience and knowledge could assess the threat, and accordingly Defendants were aware of this dangerous environment.

**Answer: Defendants deny the allegations set forth in Paragraph 36.**

37. As described above, Harris was incarcerated under conditions posing a substantial risk of serious harm, namely retaliation based on a perception that he was a snitch, which perception was directly caused by Defendant Shaw, and which risk was communicated to all Defendants thereby comprising both subjective and objective knowledge of the risk of harm.

**Answer: Defendants deny the allegations set forth in Paragraph 37.**

38. Defendants are liable for Harris's injuries because they were deliberately indifferent to the substantial risk that Harris would be attacked.

**Answer: Defendants deny the allegations set forth in Paragraph 38.**

39. Harris was attacked as alleged in Paragraph 29 of this Complaint.

**Answer: Defendants incorporate by reference their answer to Paragraph 29 as if fully restated herein.**

40. As a direct and legal result of defendants' acts and omissions, Harris has suffered damages, including without limitation, injury to his jaw and mouth, persistent speech and eating problems, and pain and suffering.

**Answer: Defendants deny the allegations set forth in Paragraph 40.**

41. The acts and omissions of Defendants were willful, malicious, intentional, oppressive, reckless and/or were done in conscious disregard of Harris's rights, welfare and

safety, thereby justifying an award of punitive and exemplary damages in an amount to be determined at trial.

> **Answer: Defendants deny the allegations set forth in Paragraph 41.**

42. Plaintiff's injuries were the direct result of actions and inactions by Defendants because each Defendant was in a supervisory or direct position such that they could have and should have had Harris moved or otherwise protected so that he would not suffer attack and therefore as supervisors, Defendants (in their official capacity) are liable for Harris's injuries.

> **Answer: Defendants deny the allegations set forth in Paragraph 42.**

RELIEF

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendants as follows:

> **Answer: Defendants deny that Plaintiff is entitled to any relief whatsoever.**

43. For compensatory, general and special damages in an amount according to proof ;

> **Answer: Defendants deny that Plaintiff is entitled to any relief whatsoever.**

44. For punitive damages against individual Defendants;

> **Answer: Defendants deny that Plaintiff is entitled to any relief whatsoever.**

45. For reasonable costs of this suit, including expert fees and attorney 's fees, pursuant to 42 U.S.C. § 1988; and

> **Answer: Defendants deny that Plaintiff is entitled to any relief whatsoever.**

46. For such further relief as the Court may deem just, proper and appropriate.

> **Answer: Defendants deny that Plaintiff is entitled to any relief whatsoever.**

47. Plaintiff demands a jury trial as to all claims for damages pursuant to the Seventh Amendment to the Constitution of the United States.

**Answer: Defendants admit that Plaintiff demands a jury trial pursuant to the Seventh Amendment to the Constitution of the United States, but deny that he is entitled to any relief whatsoever.**

## GENERAL DENIAL

Defendants deny each and every allegation not specifically admitted herein.

## AFFIRMATIVE DEFENSES

NOW COME Defendants, by their attorney LISA MADIGAN, Attorney General for Illinois, to plead the following Affirmative Defenses.

### AFFIRMATIVE DEFENSE NO. 1
Qualified Immunity

At all times relevant herein, Defendants acted in good faith and in furtherance of lawful objectives without violating Plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have known. Defendants are therefore protected from suit by the doctrine of qualified immunity.

### AFFIRMATIVE DEFENSE NO. 2
Prison Litigation Reform Act

To the extent applicable, Plaintiff is governed by the Prison Litigation Reform Act ("Act"), 42 U.S.C. § 1997(e)(a).. Plaintiff failed to exhaust the administrative remedies as required by the Act, *id.*; *see also Dale v. Lappin*, 376 F. 3d 652, 655 (7th Cir. 2004).

## JURY DEMAND

Defendants demand a trial by jury on all issues herein triable.

Respectfully submitted,

**LISA MADIGAN**
Attorney General for Illinois

*/s/ Jeffrey J. Freeman*
JEFFREY J. FREEMAN
Assistant Attorney General
Office of the Illinois Attorney General
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601-3397
(312) 814-4451
JFreeman@atg.state.il.us

*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on May 26, 2016, he electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Northern District of Illinois using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Jeffrey J. Freeman*